**DUNIGAN v. BURNET, Commissioner of Internal Revenue.**

No. 5761.

Court of Appeals of the District of Columbia.
Argued May 3, 1933.
Decided June 5, 1933.

202

Stanton C. Peelle, of Washington, D. C., for appellant.

G. A. Youngquist, Sewall Key, Francis H. Horan, and C. M. Charest, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal by Helen M. Dunigan, as administratrix of the estate of David J. Dunigan, deceased, from a decision of the Board of Tax Appeals determining income tax deficiencies for the years 1922 and 1923.

The case is said to be one of first impression.

A condensed statement of facts taken from the findings of the Board is as follows: Deceased, Dunigan, was during the years 1922 and 1923, and for several years prior thereto, engaged in the real estate business in the District of Columbia. It was his practice to purchase unimproved parcels of land and to erect houses thereon, mostly of a small residential type, which he would sell in single units. During 1919 he purchased two such tracts of land in the northwest section of the District of Columbia upon which he subsequently built houses. Some of these houses he sold in 1922 and 1923. The profits derived from these sales are the items in dispute in this proceeding. The *land* was acquired by Dunigan more than two years prior to the dates of the sales, but the *buildings* were erected within the two years. Deceased filed for 1922 and 1923 income tax returns in which he reported the profits from the sales as *capital net gains* within the meaning of section 206 of the Revenue Act of 1921 (42 Stat. 227, 232). The Commissioner treated the profits as ordinary income and asserted the deficiencies. The division of the Board of Tax Appeals to which appeal was taken reversed the Commissioner and held that no further tax was due. The entire Board reviewed the decision of the division, and held that so much of the profit as was apportionable to the enhancement in value

of unimproved land was taxable as capital gain, but so much as was attributable to the houses erected thereon within the two-year period was not capital gain and was returnable and taxable as ordinary income. If all the profits arising from the sale of the property are taxable as capital gain, there is no deficiency.

The question for decision, therefore, is whether the Board of Tax Appeals was right in segregating the amount of profits realized as between the land itself and the improvements placed thereon and in holding that the portion of the profits allocable to the improvements—the buildings—was not capital gain within the statute. The formula used to ascertain what portion of profits is attributable to land and what portion to buildings has the approval of both taxpayer and Commissioner.

Section 206 (b) of the Revenue Act of 1921 (42 Stat. 227, 232) provides that "Any taxpayer * * * who for any taxable year derives a capital net gain" may pay in lieu of the tax imposed by sections 210 and 211 (42 Stat. 233) a tax of 12½ per cent. on such capital net gain.

The term "capital assets" means property acquired for investment and held for more than two years. The purpose of the act, by a reduction of the regular tax rate, was to stimulate consummation of profitable transactions in property bought for investment; in other words, to expedite sales of property which would be otherwise postponed by reason of the high rate of taxation. It was anticipated the government would be the gainer by increased revenues. See Burnet v. Harmel, 287 U. S. 103; 53 S. Ct. 74, 77 L. Ed. 199.

In the sale of stocks, bonds, or land bought for investment as an entirety, the applicability of the provisions of the statute depends solely on the question of the time of acquisition, but here we have a case in which property sold as a whole was acquired, part more than two years prior to sale, and part less than two years. The difficulty that first suggests itself in such circumstances is how to allocate the profits. However perplexing that may be ordinarily, it is agreed in this case the method adopted is fair. Taxpayer, however, invokes the common-law rule that, when buildings are erected on land, the former become part and parcel of the latter and the two are merged into and become one, and he insists that, if Congress had intended to depart from this rule of identity of buildings with the land on which they stand, it would

have said so in plain and appropriate language. The question, for many reasons, is not wholly free from doubt, but the doubt disappears, we think, when the language of the provision of the act is considered in connection with the established practice in the administration of other provisions of the tax laws in relation to the same subject-matter, i. e., lands and buildings, etc. In none of these is the common-law rule of identity followed.

For instance, universally buildings and land are taxed separately for state taxation purposes. When the buildings are torn down, or destroyed, the custom is to abate the tax assessment accordingly. For purposes of depreciation under the federal tax laws, the land and buildings are considered separately. In the case of the removal of timber, allowance is made for depletion, and so also in the case of minerals, or oil or gas removed from the land. If the owner of the land and buildings destroys the latter to make room for another, the tax laws permit a deduction equal to the value of the destroyed buildings as a loss sustained in the year of demolition. These illustrations which occur to us seem to recognize that in taxing statutes the common-law rule is no longer always applicable, that the fiction which it established has yielded to practical considerations, fair alike to the sovereign and the citizen. Nor is the rule inflexible even in cases between private parties, for "the ownership of a house erected upon land may sometimes be severed from that of the land by express stipulation or implied understanding, in which case the house is to be regarded as personalty." Minor on Real Property (2d Ed.) vol. 1, § 23.

As we have seen, the statute makes the lower tax rate applicable in the case of profits derived from the sale of "property acquired and held by the taxpayer for more than two years." Here admittedly the houses were held "for investment" less than two years before sale, and so, as a matter of actual fact, the investment was made less than two years before the profits were realized, and here, as we have seen, the profits were determined and undisputed. This history and sequence put the case squarely outside the language of the section (206). In such circumstances, to apply the common-law rule that whatever is annexed to the freehold becomes part of it, and thus to disregard the period of time as applied to acquisition of the houses, would be to substitute a legal fiction for a long-recognized policy of sever-

ance of land and buildings where actuality is and ought to be the controlling consideration. "When logic and the policy of a state conflict with a fiction due to historical tradition, the fiction must give way." Blackstone v. Miller, 188 U. S. 189, 206, 23 S. Ct. 277, 279, 47 L. Ed. 439.

Affirmed.