## WOOD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2977.

Circuit Court of Appeals, First Circuit.
Jan. 31, 1935.

Charles W. Morrill, of Boston, Mass. (Willard B. Luther, of Boston, Mass., on the brief), for petitioner.

Berryman Green, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

Ellen Ayer Wood of Beverly, Mass., has filed a petition to review a decision of the Board of Tax Appeals of July 18, 1934, determining deficiencies in the petitioner's federal income taxes for the calendar year 1929, in the sum of $10,632.51. The petitioner admits that she is liable to a deficiency assessment of about $4,179.35. This leaves some $6,453.16 in controversy.

Prior to April 16, 1927, the petitioner was the owner of 1050 shares of stock of the Chase National Bank. On December 30, 1927, in the exercise of rights issued by the bank to its stockholders, she bought 82 shares of the stock which she sold on April 16, 1929, making a profit on the sale of the 82 shares and an additional four-eighths of a share, dealt with later, of $63,-108.91.

The petitioner's broad claim is that this profit was a capital gain. She elected to be taxed at the rate of 12½ per cent. on this gain, under section 101 (a) of the Revenue Act of 1928, instead of having it added to her ordinary income and paying such normal taxes and surtaxes as she would otherwise be liable for, and she made her return for the calendar year 1929 accordingly.

The Commissioner, in determining the deficiency tax, included these profits in the ordinary net income on the ground that the stock was held for less than two years. In this he was upheld by the Board of Tax Appeals, and the question before us is whether the Board was right in its decision.

The controlling statute is section 101 of the Revenue Act of 1928 (45 Stat. c. 852, pp. 795, 811 [26 USCA § 2101]), the material parts of which are as follows:

"Sec. 101. Capital Net Gains and Losses

"(a) Tax in Case of Capital Net Gain. In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain. * * *

"(c) Definitions. For the purposes of this title—

"(1) 'Capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921. * * *

"(8) 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include," etc. (Exceptions not here material.)

Prior equivalent statutes as applied to circumstances like those in this case were given an interpretation by a ruling of the Commissioner promulgated in December, 1923 (I. T. 1786, C. B. 11–2, page 45) as follows:

"In the case of stock acquired upon the exercise of rights, if the stock with respect to which such rights were issued was acquired and held by the taxpayer for profit or investment for more than two years,

he may elect to be taxed upon the gain from the sale of such stock under the provisions of section 206 of the Revenue Act of 1921." (The capital gain provision.)

This interpretation was acted upon from that time up to 1931, when it was changed to comply with a decision of the Board of Tax Appeals in that year (Rodman E. Griscom v. Commissioner, 22 B. T. A. 979), and the petitioner argues that by reason of this interpretation of the statute by the Commissioner over so long a period, we should be guided by it in reaching our conclusion in the present case. But such rulings "have none of the force and effect of Treasury Decisions and do not commit the Department to any interpretation of the law which has not been formally approved and promulgated by the Secretary of the Treasury," as stated in a cautionary notice on the cover pages of the bulletins publishing them. See Helvering v. New York Trust Co., 292 U. S. 455, 467, 468, 54 S. Ct. 806, 78 L. Ed. 1361. No decision or regulation of the Treasury Department has been announced covering this subject, and there is no reported decision of any of the courts bearing upon it. Outside of the decision of the Board of Tax Appeals in Griscom v. Commissioner, supra, and the decision we are now reviewing, it is res nova.

The broad claim of counsel for the petitioner is that the 82 shares of Chase National Bank stock acquired by her through the exercise of rights, in their entirety were held by her for more than two years prior to their sale, and are therefore capital assets. This claim is based on the fallacious statement that: "Where a right to purchase stock is issued and the stockholder exercises the right and obtains a new certificate of stock, his interest in the corporation has not been changed, he merely has more certificates evidencing that interest." That this statement is erroneous is shown in Miles v. Safe Deposit & Trust Co., 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923. There, before issuing the rights, each share of stock represented an interest of $710. After the exercise of the rights and the purchase of new stock by the stockholder, in place of one share of the value of $710 he had two shares of the value of $860. This added value of $150 was brought about, not by natural growth or by an unusual increase in the value of the property or interests of the corporation, but by the *stockholder* and others making a new investment

and putting in new capital, and his proportionate interest in the new capital was acquired at the time he purchased the new stock.

So here, when, on December 30, 1927, the petitioner purchased the 82 shares of bank stock, she acquired a new interest or property in the banking corporation presumably of the value of the money she paid in, and any of that new interest or property which she sold on April 16, 1929, or within two years after it was acquired, was not a capital asset and the gains or profits therefrom were not capital gains, but ordinary income.

The petitioner, however, does not wholly rely on her claim that the whole of the stock sold on April 16, 1929, should be considered as a capital asset, but says that: "At least that part of the eighty-two shares of Chase National Bank stock acquired by the petitioner through the exercise of rights, which may be allocated to the right element, was held by the petitioner for more than two years prior to its sale and is therefore 'Capital Assets.'" To this we agree for reasons which become apparent from what follows.

With this in mind it becomes necessary to determine the rule by which to ascertain what part of the value of a share of stock should be allocated to the old interests and what part to the new.

Certificates of stock are not in themselves property, nor is a share of stock evidenced by a certificate an interest in any particular portion of the porperty or rights of the corporation. The certificates "show that he [the stockholder] or his assignors, immediate or remote, have contributed capital to the enterprise" and "that he is entitled to a corresponding interest proportionate to the whole." Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A. L. R. 1570. Every share represents a proportional interest in the whole and every part. This proposition is so firmly established as to need no citation of further authorities. It is essential, however, in dealing with the question here raised, that this principle be kept clearly in mind.

From it it follows that when new capital is added to the assets of an existing corporation each share represented by the certificates issued therefor is not a share in the new capital alone, but automatically spreads over and attaches itself to the whole and every part of the corporation

and the old certificates likewise automatically come to represent interests in the new as well as the old. Therefore, when the petitioner purchased the 82 shares of stock in December, 1927, thus adding to her holdings of 1050 shares, she had 1132 shares each of which was a proportional interest in the whole corporation—both the old and the new values—and when she sold a share, whether by delivering an old or new certificate, she transferred a proportional interest in the whole corporation. A part of this interest or property she had held for more than two years and a part she had acquired within the two years.

That there is no distinction in the value and character of the new and old shares is stated by the Supreme Court in Miles v. Safe Deposit & Trust Co., supra, at page 253 of 259 U. S., 42 S. Ct. 483, 485, as follows:

"The district court, proceeded correctly in treating the subscription rights as an increase inseparable from the old shares, not in the way of income but as capital; in treating the new shares if and when issued as *indistinguishable legally and in the market sense from the old.* * * *" (Italics supplied.)

And this is well illustrated in the same case at page 250 of 259 U. S., 42 S. Ct. 483, 484, the court saying:

"In order to compute the amount of the profit, the [district] court commenced with the value of the old shares prior to authorization of the stock increase, which upon the basis of evidence contained in the stipulation was taken to be what they were assessed at by the United States for purposes of the estate tax at the death of the ward's father, viz., $710 per share, and added the $150 necessary to be paid by a stockholder or his assignee in order to obtain a share of the new stock, making the cost of two shares (one old and one new) $860, and half of this the cost of one share."

That is, the value of each share, whether new or old, was $430. And it is evident that this value was due to a combination of the old interest with the new. How much then of this $430 represented the value of the old interest and how much of the new would seem the question to be determined in ascertaining what amount of new property would be transferred by selling a $430 share. The two shares (1 old and 1 new) were valued at $860. Of this amount $710 was contributed by the old and $150 by the new, or 710/860 and 150/860 were their respective proportional contributions to the value of each share, and 71/86 of $430 would be the value of the old interest or property, while 15/86 would be the value of the new. To illustrate this by more simple figures: If the old stock was valued at $150 and the subscription price of the new was $100, the two shares (1 new and 1 old) would be valued at $250, and every one of the shares, both new and old, would be worth $125. To this value the old interest contributed 150/250 (3/5) and the new interest contributed 100/250 (2/5) and 2/5 of $125 or $50 per share would be the value of the new property sold whether the certificates delivered were new or old. The above illustration applies where the stockholder has the right to subscribe for one new share for every share previously held. If, for instance, the right was to subscribe for one share for every two previously held, then the value of the two old shares would be $300 and of the new $100, or $400 for the three, making each share worth $133.33 and 300/400 or 3/4 thereof would be the value attributable to the old interest and 100/400 or 1/4 ($33.33) would be attributable to the new and would be that part of the new property sold when a share was disposed of.

As to the 4/8 share (which was a part of 37⅝ shares the petitioner acquired as a stock dividend on 300 shares derived by splitting five to one 60 shares bought by her June 15, 1929, in the exercise of certain stock rights) the interest therein attributable to her original stock holdings when determined, if of any appreciable value, should be added to the capital assets in determining the capital net gain to be taxed at 12½ per cent., and the interest therein attributable to money paid for new stock within two years of its sale should be considered in arriving at ordinary income.

The record before us does not disclose any figures or facts from which such an allocation of old and new property can here be made. But as we think the Board of Tax Appeals was in error in holding that the 82.4/8 shares represented only the new property acquired within two years, its decision must be vacated, and the case remanded for further proceedings not inconsistent with this opinion.

The order or decision of the Board of Tax Appeals is vacated, and the case is remanded to that Board for further proceedings not inconsistent with this opinion.