## BANCKER v. COMMISSIONER OF INTERNAL REVENUE.
### No. 7624.

Circuit Court of Appeals. Fifth Circuit.
March 12, 1935.

Rehearing Denied April 20, 1935.

Allen W. Clapp and Hal Lindsay, both of Atlanta, Ga., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., Thomas A. Carpenter, Sewall Key, and Norman D. Keller, Sp. Assts. to Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue, and John D. Kiley, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

Evert A. Bancker in the year 1930 owned 1,600 shares of common stock of the Coca-Cola Company, and 1,286 shares of its "Class A" preferred stock, which he exchanged with another individual for 800 shares of common stock and 643 shares of "Class A" preferred stock in Coca-Cola International Corporation. The market value of the shares he acquired being much greater than the amount he had originally invested, the

Commissioner held that a taxable gain had been realized by the exchange, and assessed a tax accordingly, which the Board of Tax Appeals sustained. The contention here is that by reason of the relation between the stocks the taxpayer had after the exchange just what he had before, and realized no gain. The facts are not disputed; the most material ones being the following: In 1919, the Coca-Cola Company was reorganized under the laws of Delaware and all its stock placed in the hands of a voting trust; the trustees issuing voting trust certificates to represent the stock held by them. In 1922, the Coca-Cola International Corporation was organized under the laws of Delaware, and its capital stock exchanged share for share for said voting trust certificates until it had more than a majority of them, after which the voting trust was dissolved and the new corporation held more than a majority of the shares of the Coca-Cola Company and thus controlled it; the other shares of the latter being held by members of the public. In 1926, a resolution was passed by the directors of International and ratified by its stockholders which recited that no debts were owing, and that it desired to reduce its capital stock, and it therefore irrevocably authorized every shareholder at any time owning its shares to exchange, by paying a small transfer fee, any number of shares for an equal number of shares of Coca-Cola, share for share, its own stock so received to be retired and its capital stock thereby reduced. The charter was amended so as to permit such reduction. Thereafter, the Coca-Cola Company made a stock dividend of 100 per cent., whereby each share of the International stock came to be entitled to two shares of Coca-Cola stock; and when the Coca-Cola Company issued its "Class A" preferred stock as a further stock dividend the International issued its "Class A" stock having like conditions, and altered its resolution touching stock retirement so that each of its common or "Class A" shares could be exchanged for two like shares of Coca-Cola. International had no substantial assets save its Coca-Cola stock, and no income except the dividends from it which, after retaining a small amount for corporate expenses, it paid out as dividends to its shareholders. The stocks of both companies were listed on the stock exchange, and the market price of International shares was usually just double that of the corresponding Coca-Cola shares. To what extent the capital stock of International has been reduced by retirements does not appear.

Bancker did not surrender his International stock, but had new certificates issued in his name and retained it.

■ The income tax amendment speaks of "income from whatever source derived." It is well settled that the mere increase in value of property held does not make taxable income, but that it must be realized by some severance or change of investment. Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Trust Co. of Georgia v. Rose (D. C.) 25 F. (2d) 997. A money measured sale or an exchange for property having a readily ascertainable market value is the usual means of realization recognized by the statutes. See Revenue Act of 1928, §§ 111, 112 (26 USCA §§ 2111, 2112). But difficulties arise touching corporate stocks. A stock dividend though representing an increase of value in corporate assets is no realization of income by the stockholder. Towne v. Eisner, 245 U. S. 418, 38 S. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254. And surrender of stock in a corporation for an equal proportion of stock in a reorganized corporation taking over the former's business may not represent any real conversion of the stockholder's capital. Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520. But if there are differences in the corporate powers and in the terms of the stock certificates, there may be a real exchange sufficient to realize gain or loss. Marr v. United States, 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079. The tax laws make substantial differences between individuals and corporations, and in tax matters the tendency is not to ignore the corporate entity unless it be used to defraud the law, but rather, when natural persons are using corporate forms to do their business, they and their corporations are held to the literal consequences. Planters' Cotton Oil Co. v. Hopkins, 286 U. S. 332, 52 S. Ct. 509, 76 L. Ed. 1135; Dalton v. Bowers, 287 U. S. 404, 53 S. Ct. 205, 77 L. Ed. 389; Burnet v. Commonwealth Improvement Co., 287 U. S. 415, 53 S. Ct. 198, 77 L. Ed. 399; New Colonial Ice Co. v. Helvering, 292 U. S. 435, 54 S. Ct. 788, 78 L. Ed. 1348. Notwithstanding the close relationship maintained in 1930 between the shares involved in Bancker's exchange, they were essentially different. The corporations, though organized under the same law, probably had different corporate powers and certainly were engaged in wholly different activities. A share of Coca-Cola stock entitled its owner to vote in the meetings of

that company, to draw dividends directly from it, and to share in its assets on dissolution. A share of International could at the holder's option be used to make him the holder of two shares of Coca-Cola, but until he exercised the option he was entitled only to vote in the meetings of International, to receive such dividends as it declared, and on dissolution to share in its then assets. So long as International held a majority of the stock of Coca-Cola, it controlled the latter, and because of this fact International stock might have an added value. On the other hand, if International's internal management should become extravagant or dishonest, its stockholders might lose their dividends and even their capital, although Coca-Cola continued to prosper. The charter of International authorizes it to deal in all sorts of bonds, stocks, and property, real and personal. It could no doubt, at least by further charter amendment, put an end to its stock retirement, sell out its Coca-Cola stock, and enter on activities of quite another sort. Unless there was a real difference between the stocks, all shares of International would long since have been retired, and unless Bancker saw some difference between his being a stockholder in Coca-Cola and in International he would not have incurred the trouble and expense of making the exchange. It was a true conversion of his capital into a substantially different investment, and served to realize and to measure the gain he had from his original purchase of Coca-Cola stock.

The petition to review is denied.