**COMMISSIONER OF INTERNAL REVENUE v. CUMMINGS.**

No. 7651.

Circuit Court of Appeals, Fifth Circuit.
May 16, 1935.

Frank J. Wideman, Asst. Atty. Gen., Lucius A. Buck and Sewall Key, Sp. Assts. to Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue, and W. E. Davis, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

A. Loeb Salkin, of New York City, for respondent.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

## HUTCHESON, Circuit Judge.

This petition to review a Board of Tax Appeals' decision questions the finding of the Board that gains from 1,202 of the 2,300 shares of common stock of Commonwealth & Southern Corporation the taxpayer sold in 1929 were capital assets, and the gains from their sale, capital gains.[1] These shares, and the 601 shares of Southeastern Power & Light Company which had been surrendered for them in what the parties have agreed was a nontaxable exchange, had been held by the taxpayer for less than two years before the sale. The challenged finding that the shares in question were capital assets is based upon the view that they really represent, were really received in exchange for, 601 option warrants the taxpayer had bought in and had held since 1925. The case as stipulated is set out in full in the Board's opinion, —— B. T. A. ——, to which we refer. It there appears that in connection with a sale in 1925 of its gold debentures the Southeastern Power & Light Company issued option warrants on its common stock at $50 a share. These option warrants, exercisable at any time, were detachable and were traded in on the New York Curb. In 1925, the taxpayer, paying $3,510 for them, bought 601 of these warrants. In 1929, the Commonwealth & Southern Corporation, in acquiring the Southeastern Power & Light Company, offered holders of the outstanding securities of that company: (a) For each share of its common stock 4½ shares, and 2¼ warrants for shares of the common stock of Commonwealth & Southern Corporation. (b) For each option warrant 2 shares of common stock, and 1 warrant of Commonwealth. The taxpayer could have exchanged his 601 option warrants directly with Commonwealth for 1,202 of its shares

and 601 of its warrants. He chose instead to exercise his option with Southeastern. In June, 1929, paying it $30,050, he received from it 601 shares of its common stock. In the same month he exchanged these for 2,704½ shares of the common stock, and 1,352¼ warrants of Commonwealth. During 1929, petitioner made sales, on different days and at different prices, of Commonwealth stock, aggregating 2,300 shares. It is stipulated that "of the total number of shares of common stock and warrants of Commonwealth received by the petitioner 1202 shares of stock and 601 warrants were received by reason of the petitioner's original ownership of the Southeastern option warrants, and 1502½ shares and 751¼ warrants were received by reason of his additional investment of $30,050." It is also stipulated that: "In the sale of the 2,300 shares the petitioner realized a profit of $27,276.10. Of this profit $25,121.81 was realized by reason of the sale for $28,080.61 of the 1202 shares of Commonwealth stock received by petitioner by reason of his original ownership of the 601 option warrants." It is further stipulated that the profit is arrived at by deducting from the selling price the $3,510 the original warrants cost, less $551.21, the market value, at the time of the exchange, of the 601 warrants of Commonwealth & Southern the taxpayer received with the 1,202 shares of common stock. The Commissioner has all along contended, and now contends, that the entire profit is taxable as an ordinary profit at the normal and surtax rates. He insists that the two-year period for which the property must be held to make it a capital asset began from the acquisition not of the warrants, but of the stock acquired through the exercise of the purchase rights they gave. The taxpayer has contended, and now contends, in accordance with the finding of the Board, that the profit of $25,121.81, stipulated as "the profit arising from the 1202 shares of the common stock received in exchange for the warrants," should be taxed as a capital net gain, and that the profit of $2,154.29 stipulated as "the profit derived from the sale of the shares attributable to the $30,050 cash," should be taxed at the normal and surtax rates. He admits that what he did in form and in fact was to exercise his option to purchase stock in the Southeastern, and afterwards exchanged them with Commonwealth for its stock and warrants. He insists that what

---

[1] Revenue Act 1928, chapter 852, 45 Stat. 791, § 101 (c), 26 USCA § 2101 (c).

he in fact did was the same in substance and in result as if he had delivered his 601 Southeastern options to Commonwealth, and paid it $30,050 cash, thus exchanging 601 warrants for 1,202 shares and 601 warrants of Commonwealth, and with $30,050 purchasing 1,502 of its shares and 751¼ of its warrants. He insists that if he had done this the Commonwealth stock and options thus allocated to the Southeastern options would have been capital assets. He insists further that since it is stipulated that he could have done that instead of what he did do, it must be taken as settled by the stipulation that what he did is the equivalent in fact and in law, as to his tax liability, of what he could have done.

◼ The Commissioner points out that in fact the Southeastern warrants were not exchanged for stock at all; they were merely exercised in the purchase of stock in Southeastern. He insists that the stipulation that the profit in question "was realized by reason of the sale of 1,202 shares of the common stock of Commonwealth, received by the petitioner by reason of his original ownership of the 601 warrants," and the one that the profit from the sale of the 2,300 shares should be allocated to 1,100 purchased and 1,200 exchanged shares, are stipulations not of facts, but of conclusions, directly contrary to what admittedly occurred. He urges that the stipulation of these erroneous conclusions is what has misled the Board into reaching an erroneous decision; that the Board should have disregarded these, and that we should now do so. He insists that what petitioner's taxable situation might have been if he had merely exchanged his warrants with Commonwealth for its stock and warrants, as under its offer he could have done, is wholly beside the mark, for that is not the case the facts make out. He insists that all that occurred here was the exercise of rights to purchase stock in Southeastern, followed by an exchange of stock so purchased for stock and warrants of Commonwealth, and the subsequent sale of part of this stock without allocation of any kind at the time of the exchange or of any of the sales. Why these conclusions so out of accord with the real facts were stipulated is not made to appear, but it does clearly enough appear from the record that the conclusions complained of are not stipulations of fact having any basis in the record. They are merely hypotheses arbitrarily assumed on an "as if" basis, in an apparent effort to ascribe to what was done the assumed effect of what might have been done. Stipulations of material facts made with authority must of course be regarded in the decision of cases. Iowa Bridge Co. v. Comm'r (C. C. A.) 39 F.(2d) 777. Stipulations of conclusions, without basis in facts, but contrary to them, may not be. Swift & Co. v. Hocking Valley R. R., 243 U. S. 281, 37 S. Ct. 287, 61 L. Ed. 722; Smith v. Comm'r (C. C. A.) 59 F.(2d) 533; U. S. v. Pugh, 99 U. S. 265, 25 L. Ed. 322.

◼ Do the stipulated facts, the stipulated conclusions rejected, support the Board's findings? We do not think so. They show merely the issuance and purchase of stock options on Southeastern stock, and the exercise of these options by the purchase of the stock. They do not show the exchange of Southeastern options for Commonwealth stock. They do not even show, if that were material, that what the taxpayer did was the equivalent to him of what he could have done. On the contrary, they negative this; for it is definitely stipulated that due to the market value of Southeastern stock the petitioner found it to his advantage to first exercise the option warrants, and then make the exchange. Whether if the taxpayer had actually exchanged his Southeastern warrants for Commonwealth stock the exchange would have been tax free, we need not consider, though see our cases of Bancker v. Com'r, 76 F.(2d) 1, and Prescott v. Com'r, 76 F.(2d) 3, for no exchange was made. Taxation does not concern itself with hypotheses, but with real situations. Helvering v. Bartlett (C. C. A.) 71 F.(2d) 598. The real situation here is that detachable stock rights, purchased and owned detached from the ownership of stock, and having a value of around $50 a right, were exercised. Had these warrants been sold, the gains would have been taxable as income. Metcalf's Estate v. Com'r (C. C. A.) 32 F.(2d) 192; Helvering v. Bartlett, supra. They were not sold; they were exercised in the purchase of the stock. They were nothing but options to purchase stock. Neither their purchase nor their exercise resulted in taxable gain. They came into existence as property when they were purchased; they disappeared as property when, instead of being sold or exchanged as property, they were by their exercise merged into the executed contract represented by the stock they gave the right to buy. Helvering v. Comm'r, supra. The shares thus acquired came to the taxpayer as new prop-

erty. Wood v. Comm'r (C. C. A.) 75 F. (2d) 364. They may not be considered as standing for the options upon the exercise of which they were purchased, and therefore as held for more than two years prior to their exchange and sale. The result of the facts stipulated is that whatever the taxpayer might have done, what he did do was to exercise his rights to buy stock; that the exercise of this option gave rise to no taxable gain. It merely put him in the position of acquiring shares of stock as new capital, as to which, when he sold them, he had to account for the profits on the basis of their cost, which was the cost of the warrants, plus $30,050 cash paid when the stock was acquired.

The Board erred in determining the tax on a capital gains basis. The petition is granted, the order of the Board is vacated, and the cause is remanded to the Board for further proceedings not inconsistent herewith.