**MACY et al. v. HELVERING, Com'r of Internal Revenue.**

No. 46.

Circuit Court of Appeals, Second Circuit.

Feb. 17, 1936.

Humes, Buck, Smith & Stowell, of New York City (George W. Saam, John J. Scott and William G. F. Botzow, all of New York City, of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Ellis N. Slack, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question raised upon this petition to review the Board of Tax Appeals is whether any part of profits realized from sales of stock which was acquired through the exercise of rights to subscribe therefor is taxable under section 101 of the Revenue Act of 1928 (26 U.S.C.A. § 101 note) at the rate of 12½ per cent. as capital net gain, where the stock was sold less than two years after the rights were exercised though more than two years after

the stock on which the rights were issued was acquired.

The testator, V. Everit Macy, acquired 1,350 shares of stock of the Chase Bank in April, 1926, at a cost of $347,350. On December 7, 1927, he received as a stockholder rights to subscribe for 270 additional shares at $325 per share. He exercised these rights of subscription on December 27, 1927, and paid $87,750 for the 270 additional shares. On the date of issue, the fair market value of the rights was $41.25 a right, and that of the Chase stock ex rights was $531.87½ a share. On the date the rights were exercised, the market value of the Chase stock was $542.50 a share.

On June 12, 1928, the testator received as a stockholder rights to subscribe for 324 further shares at $400 per share. He exercised these rights of subscription on July 2, 1928, and paid $129,600 for the 324 additional shares. On the date of issue, the fair market value of the rights was $40 a right, and that of Chase stock ex rights was $580 a share. On the date the rights were exercised, the market value of the Chase stock was $546 a share. In May, 1929, less than two years after the testator had exercised these rights, but more than two years after he had acquired the original shares, he sold the 270 shares for $298,752.09 and the 324 shares for $358,-502.51.

Article 58 of Regulations 74 issued under the Revenue Act of 1928 provides that the cost basis to a taxpayer of stock acquired through the exercise of rights to subscribe shall be the subscription price plus that portion of the cost of the original stock which the value of the rights when issued bears to the value of the stock and rights at that time.

The percentage which the value of the rights to subscribe for the 270 shares bore to the value of the stock and rights at the time the latter were issued was .071974. Accordingly, the rights then represented $25,000.17 out of the $347,350 which the original stock cost. The $87,750 paid to take up the rights, plus $25,000.17, the value of the rights when issued, made the original cost basis for the 270 shares equal $112,750.17.

The percentage which the value of the rights to subscribe for the 324 shares bore to the value of the existing stock and rights at the time the latter were issued was .064516. Accordingly, the rights then represented:

Portion of cost of original lot of 1350 shares allocated to the 324 rights, or .064516 × (347,350 — 25,000.17) == $ 20,796.72

Portion of cost of 270 shares allocated to the 324 rights, or .064512 × 112,750.17 == 7,274.19

The amount paid to take up the 324 rights == 129,600.00

$157,670.91

At the time of sale in May, 1929:
The cost basis for the 270 shares was $112,750.17 — $7,274.19== $105,475.98
The cost basis for the 324 shares was $157,670.91

The Commissioner computed the profit:
From the sale of the 270 shares at $298,752.09 — $105,475.-98 == $193,276.11
From the sale of the 324 shares at $358,502.51 — $157,-670.91 == 200,831.60

The tax was figured at the ordinary rates, and not at 12½ per cent. on the above gains. To the extent that the gains were "capital assets," i. e., "property held by the taxpayer for more than two years," the tax under section 101 of the Revenue Act of 1928 should have been computed at 12½ per cent. The Court of Appeals of the First Circuit decided in Wood v. Commissioner, 75 F.(2d) 364, 366, that a portion of gains such as were made in the case at bar were "capital assets" held for more than two years. Judge Bingham, who wrote the opinion in that case, said that "when new capital is added to the assets of an existing corporation each share represented by the certificates issued therefor is not a share in the new capital alone, but automatically spreads over and attaches itself to the whole and every part of the corporation and the old certificates likewise automatically come to represent interests in the new as well as the old. Therefore, when the petitioner purchased the 82 shares of stock in December, 1927, thus adding to her holdings of 1050 shares, she had 1132 shares each of which was a proportional interest in the whole corporation—both the old and the new values—and when she sold a share, whether by delivering an old or new certificate, she transferred a proportional interest in the whole corporation. A part of this interest or property she had held for more than two years and a part she had acquired within the two years."

A somewhat analogous decision is Dunigan v. Burnet, 62 App.D.C. 221, 66 F.(2d) 201, 203, by the Court of Appeals of the District of Columbia. There land was purchased more than two years before sale, and within the two years buildings were erected thereon. It was held that so much of the profits on sales as was apportionable to enhancement in value of the unimproved land was taxable as "capital gain" and so much as was attributable to the houses which had been erected was taxable as "ordinary income."

It is to be noticed that section 101 (c) (8) of the act (26 U.S.C.A. § 101 note) defines "capital assets" thus:

"'Capital assets' means property held by the taxpayer for more than two years."

The word "property" in the above clause is not limited to the specific certificates of stock. A stock dividend is regarded as held for more than two years if the stock interest upon which it is based has been held for that period. Article 501 of Regulations 74 provides:

" * * * The specific property sold or exchanged must in general have been held for more than two years * * *. If the taxpayer has held for more than two years stock upon which a stock dividend has been declared, both the original and dividend shares are considered to be capital assets."

The Supreme Court cited a similar regulation in Helvering v. N. Y. Trust Co., 292 U.S. 455, 465, 54 S.Ct. 806, 78 L.Ed. 1361, with approval, and held that a profit upon a sale by a trustee of stock which had been transferred to the latter by a settlor as a gift for the benefit of the son of the settlor was a capital asset subject to tax at 12½ per cent. upon the gain realized between 1906, when the settlor acquired the stock, and the date of sale by the trustee. The court remarked (292 U. S. 455, 465, 54 S.Ct. 806, 809, 78 L.Ed. 1361) that, "construed strictly according to the letter," the words "held * * * for more than two years" would not cover shares received as a stock dividend within two years prior to sale, yet a stock dividend is but evidence of an existing interest and not new property. Towne v. Eisner, 245 U.S. 418, 426, 38 S.Ct. 158, 62 L. Ed. 372, L.R.A.1918D, 254. Such an interest concededly exists from the time that the original shares are acquired. In Helvering v. N. Y. Trust Co., supra, the court construed the clause "held * * * for

more than two years" broadly in order to carry out the legislative purpose and, though the trust in that case was not established until 1921, held that a profit over the cost to the settlor in 1906 received by the trustee from a sale in 1922 was capital gain taxable at 12½ per cent. The decision evidently required an enlargement of the letter of the statute greater than would the interpretation that the petitioners ask for in the case at bar.

The right to subscribe for stock of a corporation offered to its shareholders has been characterized by the Supreme Court as "essentially analogous to a stock dividend." Miles v. Safe Deposit & Trust Co., 259 U.S. 247, 252, 42 S.Ct. 483, 485, 66 L.Ed. 923. When describing the nature of such a right in the foregoing decision, Pitney, J., said:

"To treat the stockholder's right to the new shares as something new and independent of the old, and as if it actually cost nothing, leaving the entire proceeds of sale as gain, would ignore the essence of the matter. * * * The district court proceeded correctly in treating the subscription rights as an increase inseparable from the old shares, not in the way of income but as capital; in treating the new shares if and when issued as indistinguishable legally and in the market sense from the old; and in regarding the sale of the rights as a sale of a portion of a capital interest that included the old shares."

Similarly in Hyde v. Holmes, 198 Mass. 287, 293, 84 N.E. 318, 319, the court said:

"An increase of capital by the corporation, which represents not only the amount then paid in, but also a value necessarily included in the capital because the stock is worth more than its par value, is in the nature of a stock dividend by the corporation, to the amount of this additional value represented by the rights to subscribe."

See, also, Blair v. Dustin's Estate, 30 F.(2d) 774, 775 (C.C.A.2).

The circumstance that the right to receive additional stock is conditioned upon the stockholder's contributing new capital to the corporation does not alter the fact that, when the condition is fulfilled, he receives what is essentially a partial stock dividend. The condition precedent does not destroy the identity of that portion of the new stock which has been derived from the original interest in the corporation.

The decision of Commissioner v. Cummings, 77 F.(2d) 670 (C.C.A.5), is not opposed to that of Wood v. Commissioner, 75 F.(2d) 364 (C.C.A.1). In the former case the taxpayer purchased in 1925, in the open market, 601 option warrants entitling him to acquire, at $50 per share, 601 shares of the common stock of the Southeastern Power & Light Company. In June, 1929, he exercised his option warrants, paid $30,-050, and received 601 shares of the common stock. In the same month he exchanged these 601 shares for stock and warrants of Commonwealth & Southern Corporation, in what was stipulated to be a tax free exchange. These he sold later in the year at a profit. The original options were issued to holders of debentures of the Southeastern Power & Light Company, but were purchased by the taxpayer and not issued to him as a stockholder. They were not derived from a stock interest of any one, and consequently were neither in whole nor in part analogous to a stock dividend, as were the rights in the present case. The decision has no bearing on the issues before us.

It seems evident from the foregoing that a portion of the 270 and 324 shares represented the taxpayers old stock interest in the 1,350 shares of the corporation which he had held for more than two years before the sales of the additional shares were made at a profit. Thus a portion of the profit was a capital asset and should only be subject to taxation at the rate of 12½ per cent.

Inasmuch as the Commissioner has not presented his theory of the proper method of apportioning the profits between "capital gains" and ordinary income, we shall not attempt to make the computation, though we should have done so had the matter been argued by both sides. As the case stands, the contention of the petitioners that the method of apportionment applied in Wood v. Commissioner (C.C.A.) 75 F.(2d) 364, was not correct would seem to be sound, but we do not conclude the Commissioner as to the method of apportionment inasmuch as the question of just how net gains are to be apportioned has not been fully presented. It is enough that the profits in part represent "capital gains" upon which a tax of 12½ per cent. only is payable and that ordinary rates were applied upon the whole. For that reason the decision of the Board of Tax Appeals must be reversed, and the case

remanded for a determination of the amount of capital net gain realized by the decedent from the above-mentioned sales. We leave the Board free to calculate, as it may be advised, the apportionment between capital gains and ordinary income.

Order reversed.