**PAGE et al. v. HAVERTY et al.**

No. 10162.

Circuit Court of Appeals, Fifth Circuit.

June 30, 1942.

Helen R. Carloss and J. Louis Monarch, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and T. Hoyt Davis, U. S. Atty., of Macon, Ga., for appellants.

Marion Smith and M. E. Kilpatrick, both of Atlanta, Ga., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

J. J. Haverty, who owned preferred stock in Haverty Furniture Companies, Inc., was paid a large dividend on May 1, 1934. He included the full amount as income in his tax return for that year, and paid the tax thereon. His executors brought this suit in 1940 to compel a refund thereof on the ground that the distribution of the corporation was not a dividend paid out of accumulated earnings and profits, and was not income taxable under Section 115 of the Revenue Act of 1934.[1] The Court below gave judgment for the plaintiff, and the defendants, executors of the estate of the collector to whom the taxes were paid, have appealed.

As defined by Section 22(a) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Acts, page 669, the gross income upon which the tax is levied includes gains, profits, and income derived from dividends. Section 115 of the Act defines a dividend as any distribution made by a corporation to its shareholders out of its earnings or profits accumulated after February 28, 1913, and every distribution is considered to be made out of earnings or profits to the extent thereof. Appellees contend that the corporation had no accumulated earnings or profits on May 1, 1934, but that the distribution was made to liquidate a surplus resulting from successive write-downs of the book value of the capital stock, and that the dividends were in fact a return to

the shareholder of a portion of his invested capital.

Prior to 1929, Clarence and J. J. Haverty owned a controlling interest in seventeen furniture stores located throughout the South. In that year Haverty Furniture Companies, a Maryland corporation, was formed as a holding company, and its stock was issued in exchange for the outstanding stock in the seventeen companies. J. J. Haverty, Clarence Haverty, and Russell Bellman were the president, vice-president, and secretary, respectively, of the parent company and each subsidiary, and were members of the board of directors of each. The parent corporation handled the advertising for all stores, investigated marketing conditions, made recommendations to managers of the subsidiaries as to purchasing, maintained control records based upon monthly reports from the stores, and from time to time regulated the financial economy of the subsidiaries by borrowing from some to lend to others. Each of the retail companies continued to operate as a separate unit, with its independent officers and board of directors, separate bank account, separate corporate minutes and records; and each kept its own books and conducted its own general business affairs in the same manner after the creation of the holding company as before.

On May 1, 1934, the parent company had a large capital deficit, and had no accumulated earnings or profits. On that date, as a result of two write-downs in the stated amount at which its capital stock was carried on its books, it had created a large surplus out of assets formerly capitalized that it elected to distribute to its shareholders in the form of a dividend. It was this dividend payment that Haverty returned as income and paid taxes upon in 1934, the amount of which his executors seek to recover. The refund is opposed on the ground that, on the day the dividend payment was made, certain of the wholly owned subsidiaries of the parent corporation had on hand accumulated earnings and profits in excess of the amount distributed, which, in view of the substantial unity of ownership, control, and management existing between the parent and its subsidiaries, should be regarded for tax purposes as earnings and profits of the parent. In the alternative it is argued that

---

the loans made by the subsidiaries to the parent in reality were dividend payments to it, and should be treated as earnings and profits rather than as corporate debts.

It is true that taxation is a practical matter in which substance controls over form,[2] but the existence of a corporate entity separate and distinct from the stockholders who own it is a fiction created and recognized by law as possessing substance for tax purposes.[3] Ownership by a parent corporation of all the stock of its subsidiary does not warrant the disregard of their separate legal entities unless the subsidiary is so dominated and controlled that it is in fact a mere instrumentality of the parent, or unless the separate corporate structure is used to promote fraud or injustice.[4] It is not claimed that separate corporate identity was maintained in furtherance of any unlawful purpose, and we think the record shows that the subsidiaries were not dominated by the parent to such an extent as would authorize the Commissioner to treat the subsidiaries and the parent as one entity for tax purposes. Haverty Furniture Companies, Inc., made no attempt to regulate any of its subsidiaries in the general conduct of affairs, and the business policies of each were fixed by its own board of directors. All purchases, sales, personnel and managerial problems, and all financial negotiations of each subsidiary were conducted by its own officers and directors. Each maintained its own corporate and business records, set up its own reserves, paid its own debts, and declared its own dividends. As recited in the stipulation of facts, at all times after October 8, 1929, through 1934 the subsidiary companies continued to operate as independent units in the same manner as before 1929, and all of the services in connection with advertising or purchasing that the parent performed in behalf of the subsidiaries were compensated for by the subsidiaries. The exercise of such powers by the subsidiaries clearly demonstrates that they were far more than mere instrumentalities of the parent, and were entitled to recognition as separate entities.

The alternative contention that the loans made by the subsidiaries to the parent should be regarded as distributions of dividends is wholly lacking in merit. Having decided that the subsidiaries and the parent are to be considered separate entities, the loans must be viewed as transactions taking place at arm's length unless, by reason of other facts in connection therewith, the contrary appears. In each instance, when a loan was made to a subsidiary by the parent or by a subsidiary to the parent, the indebtedness created was evidenced by an interest bearing note, corporate books and accounts were debited and credited, and the eventual repayment of the loan with interest was marked by a surrender of the canceled note and appropriate book-keeping entries. On the other hand, every distribution of dividends from a subsidiary to the parent was made pursuant to a formal declaration, and the amounts thereof were paid from accumulated earnings upon the dates specified without regard to the debtor-creditor relationship then existing between the subsidiary and the parent. In these circumstances it is plain that these loans actually were loans and not dividends, and that the accumulated earnings and profits account of the parent may not be considered enriched by reason thereof.

The judgment appealed from is affirmed.

[2] Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Jacobs v. Commissioner, 5 Cir., June, 1942, 129 F.2d 99.

[3] Pullman's Palace-Car Co. v. Missouri Pac. R. Co., 115 U.S. 587, 6 S.Ct. 194, 29 L.Ed. 499; Klein v. Board of Tax Supervisors, 282 U.S. 19, 51 S.Ct. 15, 75 L. Ed. 140, 73 A.L.R. 679; Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Bancker v. Commissioner, 5 Cir., 76 F. 2d 1; Continental Oil Co. v. Jones, 113 F.2d 557.

[4] United States v. Lehigh Valley R. R. Co., 220 U.S. 257, 31 S.Ct. 387, 55 L.Ed. 458; United States v. Reading Co., 253 U.S. 26, 40 S.Ct. 425, 64 L.Ed. 760; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Taylor v. Standard Gas & Electric Co., 306 U.S. 307, 618, 59 S.Ct. 543, 83 L.Ed. 669; Continental Oil Co. v. Jones, 10 Cir., 113 F.2d 557.