**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Claire Louise WILLIAMS, Respondent.**

**Harold G. WILLIAMS, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16796.**

United States Court of Appeals
Fifth Circuit.
June 17, 1958.

Charles K. Rice, Asst. Atty. Gen., John N. Stull, Lee A. Jackson, Robert N. Anderson, Davis W. Morton, Jr., Attys., Dept. of Justice, Nelson P. Rose, Chief Counsel, John M. Morawski, Sp. Atty., I.R.S., Washington, D. C., for petitioner.

Edward McCarthy, Jacksonville, Fla., McCarthy, Lane & Adams, Jacksonville, Fla., of counsel, for respondent.

Before CAMERON, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

We are here confronted with two questions of Federal income taxation; first, whether a realized profit from a sale was ordinary income or long-term capital gain; and second, whether the profit was realized by a partnership of husband and wife or by the husband alone.

Harold G. Williams and his wife, Claire Louise Williams resided at Jacksonville, Florida. He was Executive Vice President of Gulf Atlantic Transportation Company, owning less than five per cent. of its stock. In the latter part of 1945, Williams submitted a bid of $40,-000 for an uncompleted Navy tanker, the YO-206, located at a shipyard in Pensacola, Florida. The bid was accepted on November 4, 1945. Williams offered the ship to Gulf Atlantic Transportation Company which declined the deal. Williams, having paid $8,000 of the price and being without further funds to complete the purchase, invited his uncle, D. B. Williams, and his wife's father, Jules E. Schaumburg, to join him in the venture. Schaumburg declined to make an investment in the enterprise but agreed to lend Williams $10,000 provided he would give his wife, Schaumburg's daughter, one-half of any profits which Williams might realize upon a sale. Schaumburg was tired of the frequent requests of his daughter for money to pay her bills. The loan was made on condition that she discontinue her demands upon her father for money. To this condition Mrs. Williams agreed. A partnership agreement was entered into by Williams, his uncle and Southern Barge Company, a partnership of which the uncle was a member. The new partnership was called Marine Industries. Williams agreed to contribute $25,000, the uncle $2,500, and Southern Barge Company agreed to put in $22,500. Williams transferred the YO-206 to Marine Industries. At that time no definite plans for disposing of the vessel had been made.

After negotiations of several weeks Marine Industries entered into a contract with Sinclair Refining Company reciting

that it was the desire of Sinclair to purchase and of the partnership to sell the YO-206 after it should have been completed as a tankship "as hereinafter set forth." The contract referred to a contemporaneous agreement with the Gibbs Corporation for the completion of the vessel. This agreement was incorporated into the sales contract. Gibbs undertook to complete the ship in accordance with the agreed plans which included increasing the length by about 46 feet. Inspections were to be made by Sinclair. Changes in plans and specifications could be made by Sinclair at its cost. It could request extras at its charge. Sinclair agreed to pay Gibbs $50 for each day in advance of the contract delivery date that the job was completed. Gibbs agreed to pay Sinclair $50 for each day of delay in making delivery. The partnership agreed to carry builders' risk insurance to protect Sinclair, Gibbs and itself. The partnership had in its employ a watchman and a parttime bookkeeper. It used the New Orleans office of Southern Barge Company as its address. When the work was finished by Gibbs the vessel was registered as the F. C. Randall and on the day of registration, November 13, 1946, title was transferred to Sinclair. Sinclair paid $171,000 to the partnership and $187,500 to Gibbs. Williams paid Schaumburg the $10,000 but paid no interest. He bought his wife a new car, paid some of her bills, and opened a bank account for her which he closed out shortly because of overdrafts. He made no payment to her of any share of profits as such and made no accounting to her.

On the partnership tax return of Marine Industries the profit on the sale of the ship was reported as long-term capital gain. Williams and his wife filed separate income tax returns and, on the theory that the profit was earned in Louisiana, a community property state, each reported half of the profit on the sale. The profit was reported by Williams and his wife as long-term capital gains. The Commissioner of Internal Revenue determined that the profit on the sale was ordinary income rather than capital gain

and rejected the contention that the profit was community income. Williams and his wife petitioned the Tax Court for a redetermination of the tax. Before the Tax Court the community property theory was abandoned but it was there asserted that Williams' wife was a partner and the owner of a half interest in Williams' fifty per cent. share of Marine Industries. The Tax Court sustained the Commissioner. Williams has petitioned for review of the Tax Court's decisions.

■ Mrs. Williams made no contribution to the partnership capital and her father made none for her. The father made a loan to Williams expecting it to be repaid, as it was. The condition of the loan, that Williams pay half of his profits to his wife, did not change the character of the loan into a contribution to partnership capital. Mrs. Williams assumed no risk of any loss in the venture and performed no services. We agree with the Tax Court's determination that she was not a partner. Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659.

■ It is contended by Williams that when the company by whom he was employed declined to take the vessel the efforts, and their culmination, in disposing of the vessel were by way of liquidation. As a liquidating venture, says Williams, capital gains treatment of the profit was in order. Reliance is placed upon United States v. Robinson, 5 Cir., 1942, 129 F.2d 297, Fahs v. Crawford, 5 Cir., 1947, 161 F.2d 315, and Smith v. Commissioner, 5 Cir., 1956, 232 F.2d 142. For the Commissioner it is asserted that Williams' intent to liquidate is not the issue, and that we are concerned with the nature of the income to the partnership. The Commissioner stresses the Tax Court's statement that "Nothing in the evidence is contrary to the idea that it [the partnership] acquired the property and held it for the primary purpose of sale." The partnership agreement recited a partnership purpose "of carrying on the business of buying, constructing, completing, equipping, selling, hiring, leasing, chartering and operating

ships and vessels of all kinds and character, specifically including tankships." However, the exercise of a power and not the possession of it is the material factor to be weighed in determining whether or not a particular activity or transaction is in the ordinary course of trade or business. Alabama Mineral Land Co. v. Commissioner, 5 Cir., 1957, 250 F.2d 870. No evidence indicates that any other ship purchases by the partnership were contemplated. A partnership organized to dispose of a single property is not operating a business of selling property of such kind and character. Guggenheimer v. Commissioner, 2 Cir., 1954, 209 F.2d 362. Fidler v. Commissioner, 9 Cir., 1956, 231 F.2d 138. We are in accord with the Tax Court's findings that the vessel was acquired, both by Williams and by Marine Industries, for the purpose of sale and it was held for sale at the time it was sold. This does not necessarily mean that the property was sold while being held for sale in the ordinary course of trade or business. Thomas v. Commissioner, 5 Cir., 1958, 254 F.2d 233. The purchase and sale of the vessel was a non-recurring speculative venture and the transactions of its acquisition and disposition did not constitute a trade or business of either Williams or the partnership, Marine Industries. Thomas v. Commissioner, supra. The tankship was a capital asset and it was not held primarily for sale to customers in the ordinary course of trade or business.

Williams says that the tanker was acquired on March 19, 1946, and sold November 13, 1946, and hence the holding period was more than six months. The Commissioner's position is that an uncompleted hull was purchased and a completed tanker was sold. The Commissioner compares the hull to a window sash that loses its identity upon becoming a part of a completed structure. The holding period of the tankship, according to the Commissioner's contention, did not begin until the conversion was completed. This was only a few days before

the transfer to Sinclair, and hence the capital gain, if it was such, was a short term of gain and taxable at ordinary income rates. The YO-206, a partially constructed tankship, was transferred to Marine Industries on March 19, 1946, and by this date is the beginning of the holding period to be determined. The agreement between Gibbs, Sinclair and Marine Industries provided that Gibbs would complete as a tankship the YO-206. The sales contract between Sinclair and Marine Industries recited the desire of Sinclair to purchase and of Marine Industries to sell the YO-206 "after it shall have been completed as a tankship." After the YO-206 had been completed or converted it was registered as the F. C. Randall and transferred from Marine Industries to Sinclair by bill of sales dated November 13, 1946. We do not think it can be said that the hull YO-206 was not a subject matter of the sale. It was treated as such by the parties and the treatment was the recognition of a fact rather than the creation of a fiction. Obviously something more than the hull YO-206 was acquired by Marine Industries and sold to Sinclair. The partially completed YO-206 and perhaps some additional portion of the later completed tankship were held for the six month period, and the portion of the gain allocable to that part of the tankship which had been completed more than six months before the sale should be accorded long-term capital-gain treatment. Paul v. Commissioner, 3 Cir., 1953, 206 F.2d 763; Dunigan v. Burnet, 1933, 62 App.D.C. 221, 66 F.2d 201.

The Tax Court, having decided that the holding period of the subject matter of the sale was less than six months, it did not, of course, make any determination as to the apportionment of the gain. This, we think, should have the consideration of the Tax Court. Therefore we express no opinion as to whether the allocation should be made on the basis of value, as Williams contends, or on the basis of cost in accordance with the Commissioner's view.

For a redetermination of Williams' tax liability and further proceedings in accordance with this opinion, the judgment of the Tax Court is

Reversed and remanded.