## INSULL v. COMMISSIONER OF INTERNAL REVENUE (three cases).

### Nos. 5846–5848.

Circuit Court of Appeals, Seventh Circuit

Jan. 19, 1937.

Elden McFarland, of Washington, D. C., and E. J. Quinn, J. F. Riordan, and Floyd E. Thompson, all of Chicago, Ill., for petitioners.

Robert H. Jackson, Asst. Atty. Gen., Sewall Key and Maurice J. Mahoney, Sp. Assts. to the Atty. Gen., for respondent.

Before SPARKS, Circuit Judge, and LINDLEY and BALTZELL, District Judges.

SPARKS, Circuit Judge.

There is but one question presented by these petitions for review of decisions of the Board of Tax Appeals. It is whether any part of the profit from the sale, in the year 1930, of common stock of the Insull Utility Investments, Inc., acquired through the exercise of stock rights grant-

ed to the holders of the corporate preferred stock, first series, is taxable as capital gain, or whether all the profit is taxable as ordinary income. The Board of Tax Appeals held that it was taxable as ordinary income, and from that decision these appeals are prosecuted.

The petitioners, with Martin J. Insull, were the owners of substantial blocks of stocks of public utility companies operating in Chicago and its vicinity. They also owned a large amount of stock in Middle West Utilities Company, a public utility holding company. Except for a very small number, those shares had been held by petitioners for more than two years prior to December 27, 1928, and constituted capital assets. On that date, the Insull Utility Investments, Inc., was incorporated under the laws of Illinois, for the purpose of taking over and handling the stocks referred to. It had an authorized capital stock consisting of 250,000 shares of prior preferred, 250,000 shares of preferred, first series, and 3,000,000 shares of common stock without par value. The petitioners and Martin J. Insull transferred their public utility stocks to the new corporation on January 4, 1929, receiving in exchange therefor, on January 11, 1929, all of the then issued preferred and common stock of the new corporation. They also received, on January 17, 1929, as further consideration for the securities so transferred, rights to purchase within a period of two years, at $15 a share, five additional shares of common stock for each share of preferred stock owned by them. At the time of their receipt, those rights had no value, but they became very valuable prior to the close of 1929. On December 31, 1929, Samuel Insull exercised a portion of his rights and thereby acquired 126,030 shares of the common stock, for which he paid $15 a share, and at the same time and for the same price a share, Margaret A. and Samuel Jr. exercised their rights, and acquired 29,640 and 18,460 shares, respectively.

On December 31, 1929, the common stock of the new company was traded in on the Chicago Stock Exchange at the following prices: High 58¾ per share, low, 57½ per share, and closing, 58¾ per share, the sales on that day on the Chicago Exchange amounting to 8200 shares. On the same day, 900 shares were sold on the New York Curb Exchange at a high of 59½, and a low of 56⅛ per share.

On January 6, 1930, the petitioners sold a portion of the shares of the common stock thus acquired by them on December 31, 1929, in the following amounts and for the following prices: Samuel Insull, Jr., 11,415 shares for $449,100; Margaret A. Insull, 6,923 shares for $276,920; and Samuel Insull, 42,816 shares for $1,712,640.

In filing their income tax returns for 1930, petitioners reported the profits on those sales as capital net gains, while the Commissioner, in determining the deficiencies, treated them as ordinary gains or profits. The Board held that the stock obtained by the exercise of stock rights was not a capital asset within the meaning of section 101 of the Revenue Act of 1928 (26 U.S.C.A. § 101 note),[1] inasmuch as it

[1] Revenue Act of 1928:

"§ 101. *Capital Net Gains and Losses.*

"(a) *Tax in Case of Capital Net Gain.* In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain. * * *

"(c) *Definitions.* For the purposes of this title— * * *

"(8) 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. For the purposes of this definition—

"(A) In determining the period for which the taxpayer has held property received on an exchange there shall be included the period for which he held the property exchanged, if under the provisions of section 113, the property received has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as the property exchanged.

"(B) In determining the period for

650

had not been physically held for more than two years after the exercise of the rights.

It is contended by petitioners that their stock rights which they acquired on January 17, 1929, were capital assets, and that when in the exercise of those rights, they acquired additional stock in the investment company, the new shares thus acquired represented in part their old continuing interest in the assets of the corporation, and in part their new interest therein. We think these contentions must be admitted. The Board, however, held that the stock acquired by the exercise of the stock rights must have been held physically for two years after the exercise of the right before it could become a capital asset as defined by section 101 of the act. We think this position is erroneous. The old securities exchanged by petitioners constituted capital assets (except as to a negligible amount) at the time of the exchange, having been held by petitioners for more than two years. Sections of Revenue Act of 1928 above set forth, and also section 113 (a) (8), 26 U.S.C.A. § 113 note. In this ruling the Board relied upon its prior decisions in Rodman E. Griscom v. Commissioner, 22 B.T.A. 979, and Ellen Ayer Wood v. Commissioner, 29 B.T.A. 1050. The Griscom Case was not appealed, but the Wood Case was appealed and reversed by the Circuit Court of Appeals for the First Circuit, 75 F.(2d) 364, 366. Thereafter, on February 17, 1936, the Second Circuit reversed the Board on a similar holding. Macy v. Helvering (C.C.A.) 82 F.(2d) 183, 185.

In the Wood Case, the court said,

" * * * when new capital is added to the assets of an existing corporation each share represented by the certificates issued therefor is not a share in the new capital alone, but automatically spreads over and attaches itself to the whole and every part of the corporation and the old certificates likewise automatically come to represent interests in the new as well as the old. Therefore, when the petitioner purchased the 82 shares of stock in December, 1927, thus adding to her holdings of 1050 shares, she had 1132 shares each of which was a proportional interest in the whole corporation * * * and when she sold a share, whether by delivering an old or new certificate, she transferred a proportional interest in the whole corporation. A part of this interest * * * she had held for more than two years and a part she had acquired within the two years.

"That there is no distinction in the value and character of the new and old shares is stated by the Supreme Court in Miles v. Safe Deposit & Trust Co. [259 U.S. 247, 42 S.Ct. 483, 66 L.Ed. 923]."

In the Macy Case, the court said,

"The circumstance that the right to receive additional stock is conditioned upon the stockholder's contributing new capital to the corporation does not alter the fact that, when the condition is fulfilled, he receives what is essentially a partial stock dividend. The condition precedent does not destroy the identity of that portion of the new stock which has been derived from the original interest in the corporation."

In Miles v. Safe Deposit & Trust Co., 259 U.S. 247, 42 S.Ct. 483, 485, 66 L.Ed. 923, stock rights were characterized as essentially the same as a stock dividend, and for purposes of computation of gain upon the sale thereof, they were placed in the same category. There, the Supreme Court said,

"To treat the stockholder's right to the new shares as something new and independent of the old, and as if it actually cost nothing, leaving the entire proceeds of sale as gain, would ignore the essence of the matter, and the suggestion cannot be accepted. The district court proceeded correctly in treating the subscription rights as an increase inseparable from the old shares, not in the way of income but as capital; in treating the new shares if and

which the taxpayer has held property however acquired there shall be included the period for which such property was held by any other person, if under the provisions of section 113, such property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as it would have in the hands of such other person.

"(C) In determining the period for

which the taxpayer has held stock or securities received upon a distribution where no gain is recognized to the distributee under the provisions of section 112(g) of this title [Act] or under the provisions of section 203(c) of the Revenue Act of 1924 or 1926, there shall be included the period for which he held the stock or securities in the distributing corporation prior to the receipt of the stock or securities upon such distribution."

when issued as indistinguishable legally and in the market sense from the old; and in regarding the sale of the rights as a sale of a portion of a capital interest that included the old shares."

See, also, Eisner v. Macomber, 252 U. S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, and Blair v. Dustin's Estate (C.C.A.) 30 F.(2d) 774.

It is contended by respondent, however, that the Macy, Wood and Miles Cases, supra, are rendered inapplicable here because of the decision in Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 769, 80 L.Ed. 1268, 105 A.L.R. 756. The Commissioner insists that the vital distinction lies in the fact that in the former cases the rights were to purchase the same kind or class of stock as that to which the rights attached, while in the instant case the rights were to purchase within two years five shares of the common stock of the corporation at $15 a share for each share of preferred stock, first series. We do not interpret the Koshland decision as recognizing that distinction. To do so would set at naught the ruling in Eisner v. Macomber, supra, and Miles v. Safe Deposit Co., supra.

True, in the Koshland Case, there had been a distribution of common stock by way of dividend to the preferred stockholders, and the Court held that that dividend was income and not a return of capital, not merely because there was a difference in the character of the stocks involved, but because the transaction worked a severance of corporate assets which resulted in an alteration of the pre-existing proportionate interests of the stockholders. The Court discussed with approval its former rulings in Eisner v. Macomber, supra; United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180; Rockefeller v. United States, 257 U.S. 176, 42 S.Ct. 68, 66 L.Ed. 186; Cullinan v. Walker, 262 U. S. 134, 43 S.Ct. 495, 67 L.Ed. 906; and Marr v. United States, 268 U.S. 536, 45 S. Ct. 575, 69 L.Ed. 1079, and said,

"Under our decisions the payment of a dividend of new common shares, conferring no different rights or interests than did the old, the new certificates, plus the old, representing the same proportionate interest in the net assets of the corporation as did the old, does not constitute the receipt of income by the stockholder. On the other hand, where a stock dividend gives the stockholder an interest different from that which his former stock holdings represented he receives income."

In the cases now before us, each of the stockholders owned the same interests in the same assets after the issuance of the rights as before. They held the common stock of the corporation in the same respective proportions in which they held the preferred stock upon which the rights were issued. Their interests were precisely the same except that they were represented by a greater number of units.

The record does not disclose that the stockholders' pre-existing interests, or any of them, were altered by the issuance of the rights. It does not disclose that the preferred stock, first series, was preferred as to dividends, or as to participation in the event of dissolution, or that it was non-voting stock, or that it was redeemable. The affirmative of all these facts was present in the Koshland Case.

We think the Board erred in holding as a matter of law that the issuance of the stock rights here involved was not essentially equivalent to the issuance of a stock dividend for the purpose of determining whether the stock received by the exercise of those rights represented in part a capital asset.

The decisions of the Board in this respect are reversed and the causes are remanded for further proceedings not inconsistent with this opinion.