NATIONAL BELLAS HESS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33036. Promulgated June 23, 1953.

*George R. Sherriff, Esq.*, for the petitioner.
*Rigmor O. Carlsen, Esq.*, for the respondent.

644

## OPINION.

ARUNDELL, *Judge:* The first question is the basis to the petitioner, for equity invested capital purposes, of certain properties acquired from its predecessor. The petitioner contends the properties were acquired in an exchange that was "non-taxable" under either section 112 (b) (4) or (5) of the Revenue Act of 1932,[1] and therefore it takes its predecessor's basis for the properties. Sec. 718 (a) (2) of the I. R. C., sec. 113 (a) (7) and (8) of the Revenue Act of 1932, Regs. 77, art. 598.[2] The respondent denies that the transaction by which the petitioner acquired the properties was an exchange within the

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS. [Revenue Act of 1932.]

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.

\* \* \* \* \* \* \*

(4) SAME—GAIN OF CORPORATION.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

[2] SEC. 718. EQUITY INVESTED CAPITAL. [Internal Revenue Code.]

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

\* \* \* \* \* \* \*

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. If the property was disposed of before such taxable year, such basis shall be determined under the law applicable to the year of disposition, but without regard to the value of the property as of March 1, 1913. If the property was disposed of before March 1, 1913, its basis shall be considered to be its fair market value at the time paid in. If the unadjusted basis of the property is a substituted basis, such basis shall be adjusted, with respect to the period before the property was paid in, by an amount equal to the adjustments proper under section 115 (l) for determining earnings and profits;

purview of section 112, *supra*. Accordingly, he contends the petitioner's basis is cost.

The transaction may be summarized as follows: In 1932 the predecessor corporation, although solvent, was in voluntary receivership for the benefit of all interested parties, including stockholders. In 1932, pursuant to a plan set forth in a court order, the properties in question were transferred to the petitioner, a corporation then newly organized by a group of key employees of the predecessor. In return, the predecessor received 300,000 of the 1,800,000 authorized shares of common stock of $1 par value. The 300,000 shares were issued to the predecessor on or before July 30, 1932, and were the only shares outstanding at that time.[3]

Pursuant to the court order, the predecessor's receivers granted to the key employees who organized the petitioner a 1-year option to

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. [Revenue Act of 1932.]

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

(7) TRANSFERS TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME PERSONS.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.

(8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

(A). by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

(B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

Regulations 77 :

Art. 598. Property acquired in reorganization after December 31, 1917.—In the case of property which was acquired after December 31, 1917, by a corporation in connection with a reorganization, if immediately after the transfer an interest or control in such property of 50 per cent or more remained in the same persons or in any of them, the basis of the property shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law which was applicable to the year in which the transfer was made.

*Example:* The X Corporation owns property which it purchased in 1925 for $10,000. It causes the organization of the Y Corporation, transferring the property to the Y Corporation in exchange for its capital stock. No gain or loss from this transaction is recognized under section 112 (b) (4) The basis of the property in the hands of the Y Corporation is $10,000, the basis which the property would have had in the hands of the X Corporation if the transfer had not been made.

[3] The petitioner also gave a $100,000 5-year promissory note secured by a chattel mortgage on the properties conveyed and assumed the predecessor's obligation to refund to its customers up to $180,000.

purchase all or none of the 300,000 shares at $2 per share. Also, pursuant to the court order, a voting trust agreement was entered into.

In contending that this transaction came within the purview of section 112 (b) (4), the petitioner argues that the property was transferred in pursuance of a plan of reorganization as defined in section 112 (i) (1) (B), Revenue Act of 1932.[4] The respondent contends that the "control" required by section 112 (i) (1) (B) was not present.

"Control" is defined in section 112 (j), Revenue Act of 1932, as "the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation." The respondent does not question the rule that control relates to equitable ownership and is not negated by the fact that under the court order the predecessor was required to deposit the stock in a voting trust. *Federal Grain Corporation*, 18 B. T. A. 242; cf. *Griswold Co.*, 33 B. T. A. 537; *Peabody Hotel Co.*, 7 T. C. 600; G. C. M. 2177, VI-2 C. B. 112. In contending that the required control was not present, the respondent relies on cases setting forth the general rule that if the transferor relinquishes the control as a step in the plan of reorganization, which step is inseparable from the others and essential in accomplishing the purpose of the plan, then the control requirement is not met. *Banner Machine Co.* v. *Routzahn*, 107 F. 2d 147, certiorari denied 309 U. S. 676; *West Texas Refining & Development Co.*, 25 B. T. A. 1254, affirmed on this point 68 F. 2d 77; *Ericsson Screw Machine Products Co.*, 14 T. C. 757; *Charles Hall*, 31 B. T. A. 125; *Omaha Coca-Cola Bottling Co.*, 26 B. T. A. 1123.

It is clear from the facts as found that the conditions calling for the application of this general rule are not present here. The 300,000 shares were the only shares outstanding at the time they were issued to the predecessor's receivers and it was not until some time later that other additional shares were issued and the predecessor lost "control."

The predecessor's ownership or "control" was real and lasting; it was not a momentary formality, and its subsequent relinquishment was not part of the plan of reorganization or exchange. By virtue of this ownership of the petitioner's capital stock, the predecessor had a continuing interest in the mail order business and the property transferred and operated under the new corporate form of the petitioner.

The respondent points to the fact that from the beginning the predecessor was obligated to grant to the employee-organizers an

---

[4] SEC. 112 (i) (1). The term "reorganization" means * * * (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred * * *.

option to purchase the 300,000 shares. We think it is significant that the predecessor was not obligated to do more than grant an option. It had not entered into a contract of sale or in any way divested itself of ownership. Cf. *American Bantam Car Co.*, 11 T. C. 397, affd. 177 F. 2d 513, certiorari denied 339 U. S. 920, and cases cited therein. Moreover, as explained in our Findings of Fact, the employee-organizers never exercised the option or acquired the shares. Cf. *Scientific Instrument Co.*, 17 T. C. 1253, affirmed per curiam 202 F. 2d 155. Instead, as a result of assignments and modifications, the receivers granted what in effect constituted a different option to different parties. This option was exercised and, as a result, the 300,000 shares were thereupon sold to the public. The fact that the receivers of the predecessor were able to grant and then modify the option and the further fact that the option was not exercised, even in part, for approximately a year emphasizes the real and substantial nature of the ownership and control in the predecessor through its receivers.

Nor is the requisite ownership and control negated by the fact that petitioner planned to sell its capital stock to the general public. The public sale was not part of the plan of reorganization or exchange. Under these circumstances, we need not look to the time of consummation of the public sale to determine whether the predecessor possessed the requisite "control." *Scientific Instrument Co., supra; American Bantam Car Co., supra.*

Finally, although admitting the transaction was pursuant to court order and for a bona fide business purpose, the respondent contends the predecessor's stockholders were interested in securing cash only and it was never contemplated that they would receive the petitioner's capital stock issued to the predecessor corporation or that the predecessor would retain it.[5] Even if accepted as true, this contention is of no moment here.

The intention of the stockholders is not determinative in these circumstances. In fact, it is now well settled that if the transferor plans to and in fact does dispose of the capital stock shortly after receipt, the ownership or control requirement is nonetheless complied with if the disposition was not required as part of the plan of reorganization or exchange. *American Bantam Car Co., supra; Evans Products Co.*, 29 B. T. A. 992, affirmed per curiam 84 F. 2d 998, certiorari denied 298 U. S. 675; *Samuel Insull, Jr.*, 32 B. T. A. 47, reversed on other issues 87 F. 2d 648; *Schmieg, Hungate & Kotzian, Inc.*, 27 B. T. A. 337. Moreover, the important fact here is that regardless of what

[5] It is interesting to note that the preferred stockholders of the predecessor did in fact receive in liquidation some of the petitioner's capital stock. We have found this as a fact based on the stipulation filed by the parties.

may have been contemplated, the predecessor corporation which transferred the property to the petitioner received all of the petitioner's outstanding capital stock and through its receivers was in "control" of the petitioner as that term is defined in section 112 (j), immediately and for some time after the transfer. The disposition which occurred after a period of approximately a year was not in pursuance of the plan of reorganization or exchange.

From what has been said above, we think it is clear that the predecessor possessed the ownership or control required for a section 112 (i) (1) (B) exchange. For the reasons discussed, we conclude that the petitioner received the properties in question from its predecessor in a nontaxable exchange under section 112 (b) (4) pursuant to a reorganization as defined in section 112 (i) (1) (B). Therefore, the basis of the properties to the petitioner for equity invested capital purposes is the predecessor's basis. Sec. 718 (a) (2), I. R. C.; sec. 113 (a) (7) and (8) of the Revenue Act of 1932; Regs. 77, art. 598. The parties have stipulated that the basis of the good will of the predecessor company for equity invested capital purposes was $5,040,000.

The next issue is whether the petitioner may deduct the fair market value rather than the par value of its own capital stock distributed to its employees during the taxable years 1943 and 1944 as compensation. The stock was distributed in accordance with the plan in the court order which provided that the petitioner could pay its employees up to 25 per cent of its annual net profits, but provided further that the percentage of profits was not to be paid in cash. Instead it was to be applied to the purchase of capital stock of the petitioner corporation at the price of $1 per share (the par value).

This provision is similar to the corporate resolution pursuant to which stock was distributed to officers in *Package Machinery Co.*, 28 B. T. A. 980, and the decision in that case is controlling here. In the instant case, as in *Package Machinery Co.*, *supra*, the effect of the provision was not to authorize the payment of a specific monetary sum, but to authorize the payment of a number of shares of an aggregate par value equal to a certain percentage of profits. That is, the 25 per cent of profits was not the sum to be paid but merely the measure of the number of shares to be issued.

Of course, these shares must be translated into a monetary sum; and this translation must be based upon a fair market value of the stock when distributed. *Package Machinery Co.*, *supra*, and cases cited therein. The total fair market value of the shares distributed to employees during the taxable years 1943 and 1944 is $265,625 and $93,758.35, respectively. The petitioner may deduct these sums for these years as compensation paid to its employees.

*Decision will be entered under Rule 50.*